UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HYDROS BOTTLE LLC,<br><br>Plaintiff,<br><br>v.<br><br>STEPHEN GOULD CORPORATION,<br><br>Defendant. | Case No. 16-cv-04077-JST<br><br>**ORDER GRANTING-IN-PART AND DENYING-IN-PART MOTION FOR ATTORNEYS' FEES**<br><br>Re: ECF No. 52 |

Before the Court is Plaintiff Hydros Bottle LLC's ("Hydros") Motion for Attorneys' Fees. ECF No. 52. Defendant Stephen Gould Corporation ("SGC") does not dispute that it owes – and agreed to pay – Hydros's reasonable attorneys' fees, but argues that Hydros's request for $158,970 is unreasonable. ECF No. 59. The Court will grant the motion in part and deny it in part.

## I.  BACKGROUND

This is an action for breach of contract. ECF No. 1 ("Compl.") ¶ 1. Hydros is a San Francisco-based company "engaged in the business of designing, marketing and selling proprietary portable, personal, reusable glass bottles in the eco-hydration space." Id. ¶ 2. SGC is a New Jersey corporation engaged in the business of manufacturing consumer products. Id. ¶ 3.

### A.  The Supply Agreement and Alleged Breach

In September 2015, Hydros contracted with SGC to make its proprietary glass water bottle. Id. ¶ 12; see ECF No. 1 at 19-31 ("Supply Agreement"). Under the terms of the Supply Agreement, Hydros was required to prepay for 50% of any purchase order. Id. at § 3. SGC had to procure at Hydros's expense molds and tooling required for manufacturing, with Hydros prepaying for 50% of the cost. Id. at § 5. The contract specifies that the molds and tooling shall belong to Hydros, though they may be in SGC's possession. Id. at § 5. The contract allows Hydros to cancel a purchase order in the event of a breach by SGC, in which case SGC should

refund any prepayments.  Id. at § 4(A).  The contract also states that it "shall be governed in accordance with the laws of the State of New York, without reference to its choice of law provisions."  Id. at § 20.

Hydros made an initial purchase order of 100,000 units.  Compl. ¶ 16.  The first 15,000-20,000 units were to be delivered in January 2016 and the remaining units were to be delivered, and the order completed, by February 12, 2016.  Id.  Hydros claims that SGC failed to deliver sample products by the agreed-upon dates, and when it did deliver these samples, they had "multiple issues" requiring further modification.  Id. ¶ 17.  Hydros alleges that this delay prevented it from selling and demonstrating its products at two trade shows in March 2016.  Id. ¶¶ 18-19.  By June 2016, Hydros alleges that SGC still had not provided any satisfactory sample products or manufactured any production-level products.  Id.  On June 17, 2016, Hydros provided notice to SGC that it was in breach of the agreement, and requested that SGC return all monies Hydros had prepaid for its purchase order as well as the molds and tooling.  Id. ¶ 24.  Hydros alleges that it prepaid $329,180 for its purchase order.  Id.  Since Hydros alleges that the molds and tooling SGC secured on its behalf were not likely to be useful – given the fact that SGC did not provide a satisfactory product – Hydros requested a refund of $97,824 in "additional amounts" paid to Hydros, presumably in connection with the molds and tooling.  Id.  SGC declined to provide a refund or to return the molds and tooling.  Id. ¶¶ 25, 27.

### B.    Procedural History and Settlement Negotiations

On July 20, 2016, Hydros filed its complaint, asserting claims for breach of contract, breach of purchase order, declaratory relief regarding ownership of molds and tooling, conversion, and negligent misrepresentation, and seeking lost profits and specific performance.  See id. at 9-18.  In its initial disclosures served later in the case, Hydros provided a preliminary computation of damages, including $329,180 for the prepayment on the purchase order, $92,874 for the initial payment for the molds and tooling, $1.5 million in lost profits, $1.7 million in money spent in marketing and other expenses based on the product that SGC was to develop, and other unquantified damages arising from the breach.  ECF No. 59-2 at 33.

On September 22, 2016, a few months after Hydros filed its complaint, SGC stated in

settlement correspondence that it would send a check to Hydros for the amount that Hydros had advanced to SGC under the Supply Agreement, and would be returning the molds and tooling it had created. ECF No. 59-2 at 2. SGC declined to return the tooling deposit, but said it would put those funds in escrow pending resolution of the litigation. Id. SGC sent follow-up messages requesting wire information and instructions for return of the tooling, but Hydros did not respond to the tender because, among other things, it was concerned that by accepting the tender it would waive its claims in the litigation, including a claim for attorneys' fees and costs. See id. at 5, 7. On October 5, 2016, SGC again offered to repay Hydros's purchase order deposit of $329,180, and offered to pay half of the tooling deposit, or $48,912, in exchange for a mutual release and agreement to dismiss the litigation with prejudice. Id. Hydros did not accept SGC's offer.

On November 14, 2016, with the parties' settlement negotiations unsuccessful, SGC filed its answer, affirmative defenses, and counterclaims. ECF No. 21. SGC did not deny that it failed to fulfill Hydros's purchase order on the agreed-upon timeline, but claimed that this failure was due to Hydros's own faulty designs and serial design changes:

> SGC denies the production and delivery deadlines . . . were commercially reasonable or otherwise enforceable . . . given the myriad changes to the product specifications that Hydros imposed during development in order to address problems inherent with its own chosen design, Hydros's multiple delays in approving samples, and other factors solely and exclusively within the control of Hydros and/or its chosen design firm, NS.

Id. ¶ 16. SGC asserted seventeen affirmative defenses and counterclaims for declaratory judgment, breach of contract, and breach of the implied covenant of good faith and fair dealing. Id. at 15-32. SGC's counterclaims and defenses were generally based on its allegations that (1) Hydros caused the breach through its own faulty designs; (2) Hydros was not entitled to return of the tooling created by SGC until it paid the full amount it owed (in addition to the 50% tooling deposit); and (3) Hydros could have, but failed, to accept SGC's offer to return Hydros's deposit and tooling. See id.

On March 9, 2017, Hydros filed a motion for judgment on the pleadings seeking (1) "partial judgment on the pleadings on its Count I (Breach of Contract) and Count II (Breach of Purchase Order) claims for the portion of those claims pertaining to the recovery of the amount of

$329,180 that Hydros deposited with Gould [SGC]"; and (2) "judgment on the pleadings in full on its Count III (Declaratory Relief Regarding Ownership of Molds and Tooling) and Count V (Specific Performance) claims and partial judgment on Count IV (Conversion/Wrongful Taking) for Gould's failure to turn over Hydros's molds and tooling to Hydros." ECF No. 44 at 2. On March 17, 2017, SGC submitted an offer of judgment pursuant to Federal Rule of Civil Procedure 68.[1] ECF No. 46-1. The Rule 68 offer differed from the October 5 settlement offer in two respects: (1) SGC offered to repay the full tooling deposit of $97,824 (as opposed to the partial repayment of $48,912 it had offered earlier); and (2) SGC agreed to pay Hydros's "reasonable attorneys' fees and taxable costs . . . reasonably incurred as of the date of th[e] Rule 68 Offer of Judgment in obtaining the Rule 68 Payment and the return of the tooling, as determined by the Court." Id. at 2. On March 23, 2017, SGC filed its opposition to Hydros's motion for judgment on the pleadings. ECF No. 45. On March 30, 2017, Hydros filed a notice that it would accept SGC's Rule 68 offer. ECF No. 46 at 2. By Order dated April 3, 2017, the Court entered judgment in favor of Hydros and against SGC in accordance with the Rule 68 offer. ECF No. 47.

On May 1, 2017, Hydros filed the instant motion and a related motion to amend the Rule 68 judgment to award it pre-judgment interest associated with the return of the tooling. ECF Nos. 51, 52.

## II. LEGAL STANDARD

In deciding the amount of attorneys' fees to award, courts calculate the presumptive fee award, also known as the "lodestar figure," by taking the number of hours reasonably expended on the litigation and multiplying it by a reasonable hourly rate. Id. (citing Hensley v. Eckerhart, 461 U.S. 424, 433 (1983)). "Although the lodestar figure is generally presumed to be a reasonable fee award, a district court 'may, if circumstances warrant, adjust the lodestar to account for other

---

[1] Rule 68 permits "a party defending against a claim [to] serve on an opposing party an offer to allow judgment on specified terms, with the costs accrued," and gives the party asserting the claim 14 days to provide written notice accepting the offer. Fed. R. Civ. P. 68(a). If a Rule 68 offeree declines the offer, and "the judgment that the offeree finally obtains is not more favorable than the unaccepted offer, the offeree must pay the costs incurred after the offer was made." Fed. R. Civ. P. 68(d).

factors which are not subsumed within it.'"[2] <u>Santiago v. CACH LLC,</u> No. 13-cv-02234-JST, 2013 WL 5945805, at *2 (N.D. Cal. Nov. 4, 2013) (quoting <u>Camacho v. Bridgeport Financial, Inc.</u>, 523 F.3d 973, 978 (9th Cir. 2008)). One "important factor" to consider in whether to adjust the lodestar figure is the 'results obtained.'" <u>Hensley</u>, 461 U.S. at 434 (quoting <u>Johnson v. Georgia Highway Express, Inc.</u>, 488 F.2d 714, 717-19 (5th Cir. 1974)). Ultimately, "[c]ourts have 'a great deal of discretion in determining the reasonableness of the fee.'" <u>Id.</u> (quoting <u>Camacho</u>, 523 F.3d at 978).

The party seeking an award of fees bears the burden of submitting evidence supporting the hours worked and the rates claimed. <u>Hensley v. Eckerhart</u>, 461 U.S. 424, 433 (1983). The moving party also bears the burden of "producing satisfactory evidence 'that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.'" <u>Iguacu, Inc. v. Antonio Cabrera Mano Filho</u>, No. C 09-0380 RS, 2014 WL 3668574, at *3 (N.D. Cal. July 23, 2014) (quoting <u>Blum v. Stenson</u>, 465 U.S. 886, 895 n.11 (1984)). "Affidavits of the plaintiff[']s attorney and other attorneys regarding prevailing fees in the community, and rate determinations in other cases, particularly those setting a rate for the plaintiff[']s attorney, are satisfactory evidence of the prevailing market rate." <u>United Steelworkers of America v. Phelps Dodge Corp.</u>, 896 F.2d 403, 407 (9th Cir.1990). The court may "exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary." <u>Id.</u> at 434.

---

[2] Factors a court may consider in adjusting the lodestar figure include "(1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the 'undesirability' of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases." <u>Kerr v. Screen Extras Guild, Inc.</u>, 526 F.2d 67, 69 (9th Cir. 1975). The Supreme Court has since called into question the relevance of two of the original <u>Kerr</u> factors. <u>See Davis v. City of San Francisco</u>, 976 F.2d 1536, 1546 n. 4 (9th Cir.1992) (noting that the Supreme Court has deemed irrelevant to a § 1988 attorney fees claim the fixed or contingent nature of the fee and has cast "doubt on the relevance of a case's 'desirability' to the fee calculation"), <u>vacated in part on other grounds</u>, 984 F.2d 345 (9th Cir.1993).

### III.    DISCUSSION

In its Rule 68 offer, SGC agreed to the "[p]ayment to Hydros of the reasonable attorneys' fees and taxable costs Hydros reasonably incurred as of the date of this Rule 68 Offer of Judgment in obtaining the Rule 68 Payment and the return of the tooling, as determined by the Court."  ECF No. 46-1 at 2.  Thus, the parties do not dispute that Hydros is entitled to its reasonable attorneys' fees.  However, the parties dispute the fee amount that would be reasonable given the circumstances in this case.  Hydros requests an award of $158,970.  ECF No. 60-1 at 9.  SGC argues that Hydros's request includes unnecessary hours – in particular hours billed after Hydros rejected SGC's October 5, 2016 settlement offer – and inflated billing rates.  See ECF No. 59.  SGC proposes an award of between $28,634 and $48,010.  Id. at 28.  The parties' competing estimates reflect the following disputes:  (1) whether New York or California law governs the determination of a reasonable fee award; (2) whether Hydros is entitled to fees incurred after it declined SGC's October 5, 2016 settlement (i.e. whether the hours for which Hydros seeks fees were reasonably expended); and (3) whether the billing rate for Hydros's attorneys is commensurate with the prevailing rate in this district and consistent with the results they obtained for their client.  The Court addresses each issue in turn and calculates the lodestar figure as set forth below.

### A.    Choice of Law

"Federal courts sitting in diversity must apply the forum state's choice of law rules to determine the controlling substantive law."  Fields v. Legacy Health Sys., 413 F.3d 943, 950 (9th Cir. 2005) (citation and quotation omitted).  The Court therefore applies California choice-of-law principles in determining the controlling substantive law.

SGC contends that the Court must apply New York law in determining the appropriate fee award.  ECF No. 59 at 12.  SGC bases its argument on the fact that both the Supply Agreement and a related IP Protection Agreement, both of which provide for an award of "reasonable attorney fees" in the event of a dispute, contain a New York choice of law provision.  Id.  According to SGC, since the parties intended for New York law to govern all aspects of a dispute, SGC argues New York law must govern the award of attorneys' fees.  Id.

Hydros contends that the Rule 68 agreement is separate from the Supply Agreement, and because the Rule 68 agreement was "entered into California" and was silent on the choice of law question, California law should apply.  See ECF No. 52 at 9-10; see also ECF No. 62 (Reply in Support of Motion to Amend Rule 68 Judgment to Add Prejudgment Interest) at 2-3 (describing Rule 68 offer as "separate and apart" from the Supply Agreement, noting Rule 68 offer was "made and accepted in California and, therefore, should be interpreted under California law").

The essence of the parties' dispute is whether the choice of law provision in a contract governs the award of attorneys' fees pursuant to a Rule 68 offer that is silent as to choice of law. Under California law, "the scope of a choice of law provision is ordinarily determined under the law designated in the contract between the parties." Cardonet, Inc. v. IBM Corp., No. C-06-06637 RMW, 2007 WL 518909, at *2 (N.D. Cal. Feb. 14, 2007).  Here, the parties agree New York law governs the Supply Agreement.  Under New York law, "public policy favors enforcement of forum selection clauses and supports a broad reading of these clauses. . . ." Triple Z Postal Servs., Inc. v. United Parcel Serv., Inc., No. 118057/05, 2006 WL 3393259, at *7 (N.Y. Sup. Ct. 2006).[3] The scope of these clauses is not limitless, however, and when evaluating them, "[o]ne common thread running through . . . the inquiry [is] whether the plaintiff's claims depend on rights and duties that must be analyzed by reference to the contractual relationship." Direct Mail Prod. Servs. Ltd., v. MBNA Corp., No. 99 Civ. 10550(SHS), 2000 WL 1277597, at *6 (S.D.N.Y. Sept. 7, 2000).  Id.

Here, the award of Hydros's reasonable attorneys' fees turns on the parties' respective rights and obligations under the Rule 68 agreement, not the Supply Agreement.  Because the Rule 68 agreement does not specify a choice of law, ordinary contract principles dictate that the Court apply California law.  "A contract is to be interpreted according to the law and usage of the place where it is to be performed; or, if it does not indicate a place of performance, according to the law and usage of the place where it is made." Cal. Civ. Code § 1646.  The Rule 68 offer was made

---

[3] For example, New York courts have held that that a contractually-based forum selection clause governs tort claims if the tort claims "ultimately depend on the existence of a contractual relationship" between the parties. Direct Mail Prod. Services Ltd., v. MBNA Corp., No. 99 Civ. 10550(SHS), 2000 WL 1277597, *6 (S.D.N.Y. Sept. 7, 2000) (citing cases).

and accepted in California, so the Court will apply the law of that jurisdiction.

This approach is consistent with Ninth Circuit cases that generally analyze Rule 68 agreements as if they were stand-alone contracts.[4]  See, e.g., Erdman v. Cochise Cty., Ariz., 926 F.2d 877, 880 (9th Cir. 1991) (explaining that "[t]ypically, a [Rule 68] settlement agreement is analyzed in the same manner as any contract").  As a standalone contract, a Rule 68 agreement is interpreted according to the "usual rules of contract construction."  Nusom v. Comh Woodburn, Inc., 122 F.3d 830, 833 (9th Cir. 1997).

SGC points to two federal cases that applied contractual choice of law clauses to determine whether a prevailing plaintiff was entitled to attorneys' fees.  Alakai'i Mech. Corp. v. RMA Land Constr., Inc. – ECC (a Joint Venture), No. 14-00145-HG-KSC, 2016 WL 8710425, at *3 (D. Haw. Han. 15, 2016); JMP Sec. LLP v. Altair Nanotechnologies Inc., 880 F. Supp. 2d 1029, 1033-34 (N.D. Cal. 2012).  These cases do not assist SGC.  In both cases, the court was entering judgment on a claim for breach of the same contract containing the choice of law provision.  Alakai''i, 2016 WL 8710425 at *1, 5; JMP, 880 F. Supp. 2d at 1033, 1035-36.  Neither case involves a Rule 68 offer of judgment.  SGC has not identified – and the Court is not aware of – any authority suggesting that a Rule 68 agreement that resolves a breach of contract case should be governed by the law of the jurisdiction specified in the underlying contract's choice of law provision.

The Court will apply California law.[5]

## B.    Lodestar Calculation:  Hours Reasonably Expended

Hydros seeks an award of $158,970 for its work on the case on or before March 17, 2017, when it accepted SGC's Rule 68 offer.  That work includes pre-filing investigation, preparing and filing the complaint, answering SGC's counterclaims, negotiating a case schedule, preparing for mediation, and drafting a motion for judgment on the pleadings.  See ECF No. 52 at 14.

---

[4] If SGC intended New York law to govern the Rule 68 agreement, it should have made it an explicit term of its offer.

[5] SGC does not identify any material difference between New York and California law with respect to the determination of attorneys' fees, and cites both California and New York law throughout its opposition brief.  Indeed, SGC concedes that "courts in both New York and California rely on the [same] standards" in determining the appropriate attorney fee award.  ECF No. 59 at 13.  The choice of law issue has a greater impact on Hydros' companion motion regarding the prejudgment interest.  See ECF No. 51.

SGC argues that "a significant portion of [the hours submitted by Hydros] should be excluded from the fee award as excessive, redundant, and/or unnecessary . . . ." ECF No. 59 at 19. Specifically, SGC claims "[h]ad Hydros acted reasonably and accepted SGC's early offers, by October 2016, Hydros would have obtained from SGC return of the Tooling and payment of all but $48,912 of the ultimate Rule 68 payment," and therefore "Hydros should not be allowed to recover all of Mr. Watson's fees incurred after October 2016 at his $785-810 rate for that limited additional recovery." Id. at 20. SGC further contends that the additional $48,912 Hydros recovered from the five months of litigation that followed is trivial in comparison to the over $3 million in damages Hydros sought based on its initial disclosures, and that Hydros did not obtain a successful result since it only recovered a small percentage of the damages it had originally contemplated.[6] Id.

Hydros responds that "this Court should give no weight to Gould's supposed settlement offers because they were communications under FRE [] 408." ECF No. 61 at 12. Regardless, according to Hydros, SGC's argument is based on the flawed assumption that the October 2016 settlement offer and the Rule 68 offer Hydros ultimately accepted were roughly equivalent. Id. In fact, "Gould's offer of $378,092 is hardly equal to the Rule 68 Offer of $427,004 plus attorney's fees and prejudgment interest that Hydros accepted," and, in any event, "[f]or Hydros, a two-person start-up, even just the $48,912 difference is significant and critical to its success." Id. at 9. Hydros also contends that SGC, not Hydros, delayed resolution of the case by not making a Rule 68 offer earlier in the case, and that "it took Hydros filing of [its Motion for Judgment on the Pleadings] to convince [SGC] to settle the case and serve its March 17, 2017 Rule 68 Offer . . . that came just eight days after Hydros filed the Motion." Id. at 10-11.

The Court first considers whether it can take into account the parties' settlement discussions in determining a fee award. Hydros claims that the Supreme Court's opinion in Campbell-Ewald Co. v. Gomez, 136 S. Ct. 663 (2016) and Federal Rule of Evidence 408 preclude consideration of settlement negotiations. ECF No. 61 at 12. But in Campbell-Ewald, the Court

---

[6] Based on the revised summary of attorneys' fees submitted by Hydros, $115,892 of the $158,970 in requested fees were incurred after the October 5, 2016 settlement offer. ECF No. 60-1.

considered a very different issue: whether a settlement offer could moot a case by removing any case or controversy. Id. at 672. In concluding that it did not, the Court observed that an unaccepted settlement offer was a "legal nullity" that did not divest the district court of subject matter jurisdiction. Id. at 670. This opinion does not disturb Ninth Circuit authority holding that a district court can consider the parties' settlement negotiations in determining the degree of success of the party seeking fees and in turn the appropriate fee award. Ingram v. Oroudjian, 647 F.3d 925, 927 (9th Cir. 2011) ("district court did not err by considering settlement negotiations for the purpose of deciding a reasonable attorney fee award in this case."); A.D. v. State of Cal. Highway Patrol, 712 F.3d 446, 461 (9th Cir. 2013) ("district court has the discretion (1) to consider the amounts discussed in settlement negotiations, or not; and (2) to give those amounts as much or as little weight as it sees fit."). Thus, the Court will consider the parties' negotiations.

However, even considering the parties' history of settlement negotiations, the Court finds that Hydros is entitled to fees incurred after its rejection of SGC's October 2016 settlement offer. First, the Court agrees with Hydros that the October 5, 2016 offer and the Rule 68 offer SGC made months later are materially different. The additional $48,912 SGC agreed to pay Hydros for the tooling deposit was roughly 12% of the dollar value of the October 5, 2016 offer of $378,092. That is a non-trivial sum for a small company. Moreover, SGC's offer to pay Hydros's attorneys' fees made the Rule 68 offer a significant improvement on the October 5, 2016 offer, even if the total amount of fees to be requested or awarded was not yet known by both sides. Hydros was certainly aware of its attorneys' fees at the time it accepted the Rule 68 offer, and the additional compensation for attorneys' fees likely played a significant role in its decision to forego its damages claims. SGC either knew or should have known that its offer to pay Hydros's attorneys' fees would substantially improve its offer, or it would not have made the offer five months after its previous offer had been rejected.

Second, the Court agrees with Hydros that SGC, not Hydros, should bear the cost of the delayed resolution of the case. SGC complains that Hydros could have accepted its earlier offer, saving the parties months of litigation, but that argument turns the facts on their head. What would have settled the case earlier is SGC's making a better offer – the same one it did finally

make and that led to entry of judgment – earlier in the case.  Indeed, Hydros actually encouraged SGC to make a formal Rule 68 offer in lieu of its unilateral attempts to repay Hydros, and expressed concern about its ability to recover its attorneys' fees and costs.  See ECF No. 61 at 11 (quoting November 9, 2016 letter stating that "FRCP Rule 68 occupies the field, and Gould has not made an offer under that Rule.").  SGC chose not to do so until March 2017.

Third, the timing of its Rule 68 offer strongly suggests that Hydros's continued prosecution of its case, and in particular its motion for judgment on the pleadings, likely convinced SGC to make a Rule 68 offer and to make the terms more favorable for Hydros.[7]  Thus, contrary to SGC's suggestion, the fees Hydros incurred between October 2016 and March 2017 were not unreasonable, as they led to the very Rule 68 offer that resolved the case.  While the Court understands SGC's frustration that it might be forced to pay tens of thousands of dollars in additional fees for what seems superficially to be a modest improvement in the settlement offer, the Court finds that ultimately SGC has no one to blame but itself for the additional expense.

SGC complains that several of the entries on Hydros's original itemized fee summary are administrative tasks that were improperly billed to Hydros's trial counsel.  See ECF No. 59 at 20-25.  Hydros represents that the issues identified by SGC were not a deliberate attempt to inflate fees, but were instead a result of a clerical error in sorting the timekeeper and the narrative for each entry.  ECF No. 61 at 6-7.  With its reply brief, Hydros submitted a revised itemized summary of its claimed attorneys' fees that fixes the errors identified by SGC and removes an entry from March 27, 2017 that was inadvertently included in the original submission.  Id.  The Court agrees that the revised submission resolves the objections raised by SGC, and will consider Hydros's revised summary for purposes of this motion.

---

[7] SGC contends that Hydros should not be able to recover fees for the 24.6 hours spent in preparing the motion for judgment on the pleadings because the motion "violated Federal Rule of Evidence 408" and "bordered on frivolous."  ECF No. 59 at 21.  The Court disagrees.  The motion relied on SGC's own statements in the pleadings regarding its attempts to return Hydros's deposits – which SGC ironically now contends justifies a reduction in the fee award.  Though the admissibility of these offers under Fed. R. Evid. 408 for purposes of establishing liability is not properly at issue in this motion, the Court has reviewed the motion and concludes that it is not frivolous.  Moreover, as noted above, it appears that the filing of the motion contributed to SGC's upward revision of its settlement offer.  The Court will not deduct the hours spent on this motion from the fee award.

The Court finds that several of the entries in the revised summary are administrative tasks that are not compensable. See Nadarajah v. Holder, 569 F.3d 906, 921 (9th Cir. 2009 ) (holding that tasks "clerical in nature" should be "subsumed in firm overhead rather than billed" and that "[w]hen clerical tasks are billed at hourly rates, the court should reduce the hours requested to account for the billing errors."). This includes 14.4 hours billed by litigation paralegal Louise Tamberg, which appear to all be administrative and/or clerical in nature, such as calendaring deadlines and filing and serving documents. See ECF No. 60-1 at 3-4. This also includes the following entries for Mr. Watson, which total two hours:

| Date | Timekeeper | Hours Billed | Narrative |
|------|-----------|--------------|-----------|
| 7/30/2016 | Thomas B. Watson | 0.70 | File complaint. |
| 11/1/2016 | Thomas B. Watson | 0.50 | File stipulation regarding amended complaint. |
| 2/17/2017 | Thomas B. Watson | 0.80 | File motion to move dates. |

The Court will deduct from the fee award all 14.4 hours billed by Ms. Tamberg and 2 hours billed by Mr. Watson. The Court therefore concludes that the total hours reasonably expended in this case, and the hours for which the Court will award fees, are 203.9 hours, a deduction of 16.4 hours from that proposed by Hydros.

**C.    Lodestar Calculation:  Reasonable Hourly Rate**

Hydros paid its counsel at McKool Smith Hennigan P.C. ("McKool") their standard hourly rates. ECF No. 52 at 15. These rates are $785-$810 and $735-$755, respectively, for Thomas B. Watson and Alan P. Block, who are each Principals at McKool with over 20 years of litigation experience, and $630-$695 for Jared Siegel, a seventh-year associate.[8] Id. at 13. To support the reasonableness of these billable rates, Hydros submits the declaration of Thomas B. Watson, who testifies that "based upon his experience and knowledge of the hourly rates charged by attorneys with comparable experience who are practicing in firms of comparable size and stature to McKool Smith, the hourly rates McKool Smith charged to Hydros are comparable or less than those that

---

[8] The billable rate for these attorneys increased in 2017 compared to 2016. ECF No. 52 at 13. The Court does not consider the billing rate for Ms. Tamberg based on its finding that she performed administrative tasks that are not compensable.

12

would routinely be charged by similarly situated attorneys within the Northern District of California for prosecuting a lawsuit involving issues similar to those faced in this case." Id. at 16. Hydros also relies on two cases in which courts in this district found billing rates comparable to those of the McKool attorneys in this case to be reasonable. Prison Legal News v. Schwarzenegger, 608 F.3d 446, 455 (9th Cir. 2010 (district court did not abuse its discretion in awarding 2008 hourly rates for Bay Area attorneys of up to $875 for a Principal, $700 for an attorney with 23 years of experience, $425 for an attorney with approximately five years of experience, and $190 for paralegals); Gutierrez v. Wells Fargo Bank, N.A., No. C 07-05923, 2015 WL 2438274, at *5 (N.D. Cal. May 21, 2015) (awarding fees of between $475-975 for Principals and $300-490 for associates).

SGC argues that the rates of the McKool attorneys are excessive. It contends that this is a simple breach of contract case with no "particularly novel or complex issues," and that the issues in the case "were not complex enough to justify the high hourly rates Hydros now seeks." ECF No. 29 at 16. SGC also argues that McKool achieved "limited overall success" and ultimately obtained a small sum compared to the damages Hydros claimed earlier in the case, and that the work of the McKool attorneys does not justify such a high rate. Id. at 17. Finally, SGC argues that the only evidence Hydros submits in support of the reasonableness of McKool's rates is the testimony of its counsel, and that this at most relates to the hourly rates in Southern California, which is outside of this judicial district. Id. SGC cites to several cases in this district finding hourly rates of between $385 and $500 to be reasonable. NexRep, LLC v. ALIPHCOM, No. 16-cv-06647-JSC, 2017 WL 1356345, at *7 (N.D. Cal. Mar. 8, 2017) (in a breach of contract action where plaintiff secured default judgment, finding $450 to be a reasonable hourly rate for attorneys with 12-15 years of experience), report and recommendation adopted, 2017 WL 1315461 (N.D. Cal. Apr. 7, 2017); McMillan Data Commc'ns, Inc. v. AmeriCom Automation Servs., Inc., No. 14-cv-03127-JD, 2015 WL 4380965, at *12 (N.D. Cal. July 16, 2015) (in breach of contract action where plaintiff secured a default judgment, approving $385 hourly rate); see also Cotton v. City of Eureka, Cal., 889 F. Supp. 2d 1154, 1161-62 (N.D. Cal. 2012) (reducing rates from $700 to $500, and discounting supporting declarations that pertained only to rates charged in Southern

California).

The Court agrees with SGC that this case involves no complex or novel legal issues. "Judges in this district routinely consider the complexity of a case in determining hourly rates." Santiago v. CACH LLC, No. 13-cv-02234-JST, 2013 WL 5945805, at *5 (N.D. Cal. Nov. 3, 2013). The case involves a straightforward application of contract law to a relatively straightforward set of facts. Though the Court would not describe the ultimate Rule 68 payment that Hydros received as "limited" as SGC does, the Court agrees that this is not an extraordinary recovery that justifies a very high billing rate.

The Court does not find any of the cases identified by the parties to be particularly helpful or comparable to the facts here. The cases on which Hydros relies do not involve breach of contract claims and are otherwise not comparable to this case. In Prison Legal News, a Section 1983 case on behalf of a publication distributed to inmates, the plaintiff sought fees for post-settlement work of reviewing and responding to letters from inmates complaining about access to published materials. 608 F.3d at 453. The plaintiff in Prison Legal News submitted opinion testimony from an expert in attorneys' fees about the prevailing rate in the San Francisco market. Id. at 455. This breach of contract case bears little resemblance to the facts of Prison Legal News, and unlike the plaintiff in that case Hydros has provided no evidence regarding billing rates in the San Francisco market. The other case Hydros relies on, Gutierrez, was a complex class action litigation in which plaintiff's counsel prevailed after a bench trial. 2015 WL 2438274 at *1. In that case, Judge Alsup "award[ed] [class counsel] a handsome fee" based on his observation that counsel "performed at a superior level" as trial counsel. Id. Though the Court has no doubt as to the competence of Hydros's counsel, the Court cannot conclude based on the record before it that the McKool attorneys performed at the extraordinary level required by the successful prosecution of a class action. SGC, in contrast, relies on two cases that involve default judgments, which arguably do not require the same amount and quality of work required in an aggressively-litigated and contentious case such as this. NexRep, 2017 WL 1356345 at *7; McMillan Data Commc'ns, Inc., 2015 WL 4380965 at *12.

"[T]he court can rely on its own knowledge and experience in evaluating a request for

fees." US Foods, Inc. v. Lalla Holding Corp., No. 5:13-CV-02328 HRL, 2014 WL 4809073, at *2 (N.D. Cal. Sept. 25, 2014), report and recommendation adopted sub nom US Foods, Inc. v. Lalla Holding Corp., No. 13-CV-02328-BLF, 2014 WL 5281058 (N.D. Cal. Oct. 15, 2014); see also Ingram v. Oroudjian, 647 F.3d 925, 928 (9th Cir.2011) (agreeing that "judges are justified in relying on their own knowledge of customary rates and their experience concerning reasonable and proper fees."); Minichino v. First California Realty, No. C 11-5185 EMC, 2012 WL 6554401 at *7 (N.D. Cal., Dec. 14, 2012) (relying on the court's own experience in evaluating a fee request). The Court may also rely on decisions by other courts awarding similar rates for work in the same geographical area by attorneys with comparable levels of experience. See, e.g., Nadarajah, 569 F.3d at 917.

In other breach of contract cases, courts in this district have awarded fees ranging from roughly $300 per hour for relatively inexperienced associates to as high as $700 per hour for partners and those of equivalent experience. See Iguacu, Inc., 2014 WL 3668574 at *3 (in breach of contract action, finding discounted hourly rate for three partners of $485, $550, and $625 to be "reasonable for purposes of the lodestar calculation."); Gutowski v. McKesson Corp., No. C 12-6056 CW, 2013 WL 3242265, at *2-3 (N.D. Cal. June 25, 2013) (approving rate of $584; noting that according to a 2012 survey, "the average hourly billing rate for attorneys practicing in San Francisco was $622 and the average billing rate for partners with twenty years of experience was $602"); Minor v. Christie's, Inc., Nos. C 08-05445 WHA, C 09-00471 WHA, 2011 WL 902235, at *7 (N.D. Cal. Jan. 28, 2011) (approving rates of $600-$700 for partners in breach of contract action); Santa Fe Pointe, L.P. v. Greystone Servicing Corp., No. C-07-5454 MMC, 2009 WL 3353449, at *2-3 (N.D. Cal. Oct. 16, 2009) (approving rate of $675 for partner in Jones Day's Los Angeles office with 20 years' experience; noting that a 2009 summary of hourly rates at nine California firms indicates that an attorney with 22 years' experience bills at an hourly rate of $650); San Francisco Baykeeper v. West Bay Sanitary District, No. C-09-5676 EMC, 2011 WL 6012936 at *7-9 (N.D. Cal. Dec. 1, 2011) (approving rates of $500-585 per hour for attorneys in practice for between 14 and 25 years).

Based on the Court's experience, the billing rates found reasonable in comparable cases,

and the complexity of the issues in this case, the Court finds the rates of the McKool attorneys to be excessive.  Also, it appears that a disproportionate amount of the work was performed by very senior lawyers, when that work could have been performed by lawyers with lower billing rates. Thus, some reduction in the billing rates is necessary.  However, the Court does not have sufficient information to determine individual billing rates for each of the three McKool attorneys in this case.  Thus, the Court will base its fee award on a blended rate for attorneys Thomas P. Watson, Alan P. Block, and Jared S. Siegel – accounting for the nature of the case and the overall nature of the work performed by McKool – of $600 per hour.[9]

The Court calculates the lodestar figure as follows:  203.9 hours x $600 per hour, for a total of $122,340.  The Court also finds nothing unusual or extraordinary about this case that would justify a departure from the lodestar figure.  Kerr, 526 F.2d at 69 (setting out factors to consider in adjusting lodestar figure); Santiago, 2013 WL 5945805 at *2 (lodestar figure presumed reasonable).

## CONCLUSION

Hydros's motion for attorneys' fees is granted-in-part and denied-in-part.  The Court hereby awards Hydros $122,340 in attorneys' fees.

**IT IS SO ORDERED.**

Dated:  August 10, 2017

_____
JON S. TIGAR
United States District Judge

---

[9] Not including the administrative hours identified above, the total hours for which the Court will award fees consists of roughly 140 hours for Mr. Watson, 23 hours for Mr. Block, and 40 hours for Mr. Siegel.

16