UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HYDROS BOTTLE LLC, <br> Plaintiff, <br> v. <br> STEPHEN GOULD CORPORATION, <br> Defendant. | Case No. 16-cv-04077-JST <br><br> **ORDER GRANTING-IN-PART AND DENYING-IN-PART MOTION TO AMEND JUDGMENT TO ADD PREJUDGMENT INTEREST** <br><br> Re: ECF No. 51 |

Before the Court is Plaintiff's Motion to Amend Judgment to Add Prejudgment Interest. ECF No. 51. The Court will grant the motion in part and deny it in part.

## I. BACKGROUND

This is an action for breach of contract. ECF No. 1 ("Compl.") ¶ 1. Plaintiff Hydros Bottle LLC ("Hydros") is a San Francisco-based company "engaged in the business of designing, marketing and selling proprietary portable, personal, reusable glass bottles in the eco-hydration space." Id. ¶ 2. Stephen Gould Corporation ("SGC") is a New Jersey corporation engaged in the business of manufacturing consumer products. Id. ¶ 3.

### A. The Supply Agreement and Alleged Breach

In September 2015, Hydros contracted with SGC to make its proprietary glass water bottle. Id. ¶ 12; see ECF No. 1 at 19-31 ("Supply Agreement"). Under the terms of the Supply Agreement, Hydros was required to prepay for 50% of any purchase order. Id. at § 3. SGC had to procure at Hydros's expense molds and tooling required for manufacturing, with Hydros prepaying for 50% of the cost. Id. at § 5. The contract stated that it would "be governed in accordance with the laws of the State of New York, without reference to its choice of law provisions." Id. at § 20.

Hydros made an initial purchase order of 100,000 units, for which it prepaid $329,180.

1  Compl. ¶ 16, 24. Hydros put down a $97,824 deposit for the development of the tooling and

2  agreed to pay SGC an additional $97,824 upon completion of the tooling's development. ECF

3  No. 21 ¶ 10, 47. When the contract deadlines arrived, Hydros claims that SGC failed to deliver

4  the sample products on time, and, when it did deliver the samples, they had "multiple issues"

5  requiring further modification. Compl. ¶ 17. Hydros alleges that this delay prevented it from

6  selling and demonstrating its products at two trade shows in March 2016. Id. ¶¶ 18-19.

### B. Procedural History and Settlement Negotiations

On July 20, 2016, Hydros filed its complaint, asserting claims for breach of contract, breach of purchase order, declaratory relief regarding ownership of molds and tooling, conversion, and negligent misrepresentation, and seeking lost profits and specific performance. See id. at 9-18. SGC asserted numerous affirmative defenses and counterclaims in its response. See ECF No. 21. On September 22, 2016, SGC made the first of several offers – which it characterizes as "unconditional" – to return to Hydros the purchase order deposit ($329,180) and tooling. ECF No. 58 at 12. Hydros did not accept SGC's offers. ECF No. 62 at 3.

On March 17, 2017, SGC submitted an offer of judgment to Hydros pursuant to Federal Rule of Civil Procedure 68. ECF No. 46-1. Rule 68 permits "a party defending against a claim [to] serve on an opposing party an offer to allow judgment on specified terms, with the costs accrued," and gives the party asserting the claim 14 days to provide written notice accepting the offer. Fed. R. Civ. P. 68(a). Under the terms of the offer, SGC agreed to repay Hydros for the $329,180 purchase order deposit and the $97,824 tooling deposit, and to return the molds and tooling. ECF No. 46-1 at 3. SGC also offered to pay Hydros's reasonable attorneys' fees and costs in securing the Rule 68 payment, as well as "interest at the legal rate in connection with the Rule 68 Payment and the return of the tooling, as determined by the Court." Id. Hydros accepted the offer on March 30, 2017. ECF No. 46 at 2.

## II. LEGAL STANDARD

Courts award prejudgment interest to a prevailing plaintiff to compensate the plaintiff "for the loss of use of money due as damages." Schneider v. Cty. of San Diego, 285 F.3d 784, 789 (9th Cir. 2002) (citation omitted). Typically, prejudgment interest accrues "from the time the

claim accrues until judgment is entered." Id. Because "prejudgment interest is a substantive aspect of a plaintiff's claim, rather than a merely procedural mechanism," state law governs the availability of prejudgment interest in federal diversity actions. In re Exxon Valdez, 484 F.3d 1098, 1100-01 (9th Cir. 2007) (citing Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938)).

## III. ANALYSIS

The parties do not dispute that Hydros is entitled to prejudgment interest or that state law governs its application. However, the parties dispute (1) which state's statutory prejudgment interest rate applies; (2) the time period over which the interest accrued; and (3) the principle on which the interest should be calculated.[1] The Court considers these issues in turn.

### A. Choice of Law

"Federal courts sitting in diversity must apply the forum state's choice of law rules to determine the controlling substantive law." Fields v. Legacy Health Sys., 413 F.3d 943, 950 (9th Cir. 2005) (citation and quotation omitted). The Court therefore applies California choice-of-law principles in determining the controlling substantive law.

SGC asserts that New York law, and its statutory prejudgment interest rate of 9%, applies. ECF No. 58 at 11. SGC bases its argument on the Supply Agreement's choice of law provision, which clearly states that New York law should govern the contract. Id. According to SGC, Hydros's claim to prejudgment interest is based on the Supply Agreement, which provides in pertinent part that a prevailing party in a dispute shall "be awarded its reasonable attorney fees, and costs and expenses incurred." Id. at 10. Since the parties intended for New York law to govern all aspects of a dispute, SGC argues New York law must govern the award of prejudgment interest.

Hydros counters that the Rule 68 agreement is "a contract separate and apart" from the Supply Agreement, and thus not subject to its choice of law clause. ECF No. 62 at 2. Because the Rule 68 agreement was "made and accepted in California," and was silent on the choice of law

---

[1] Hydros contends that SGC owes $46,570.96 in prejudgment interest. ECF No. 51 at 8. SGC believes the prejudgment interest to be just $14,460.98. ECF No. 58 at 15.

3

question, Hydros contends that California law, and its 10% statutory prejudgment interest rate, should apply by default. ECF No. 51 at 5.

The essence of the parties' dispute is whether the choice of law provision in a contract governs the award of prejudgment interest pursuant to a Rule 68 offer that is silent as to choice of law. Under California law, "the scope of a choice of law provision is ordinarily determined under the law designated in the contract between the parties." Cardonet, Inc. v. IBM Corp., No. C-06-06637 RMW, 2007 WL 518909, at *2 (N.D. Cal. Feb. 14, 2007). Here, the parties agree New York law governs the Supply Agreement. Under New York law, "public policy favors enforcement of forum selection clauses and supports a broad reading of these clauses. . . ." Triple Z Postal Servs., Inc. v. United Parcel Serv., Inc., No. 118057/05, 2006 WL 3393259, at *7 (N.Y. Sup. Ct. 2006).[2] The scope of these clauses is not limitless, however, and when evaluating them, "[o]ne common thread running through . . . the inquiry [is] whether the plaintiff's claims depend on rights and duties that must be analyzed by reference to the contractual relationship." Direct Mail Prod. Servs. Ltd., v. MBNA Corp., No. 99 Civ. 10550(SHS), 2000 WL 1277597, at *6 (S.D.N.Y. Sept. 7, 2000). Id.

Here, the award of Hydros's prejudgment interest turns on the parties' respective rights and obligations under the Rule 68 agreement, not the Supply Agreement. Because the Rule 68 agreement does not specify a choice of law, ordinary contract principles dictate that the Court apply California law. "A contract is to be interpreted according to the law and usage of the place where it is to be performed; or, if it does not indicate a place of performance, according to the law and usage of the place where it is made." Cal. Civ. Code § 1646. The Rule 68 offer was made and accepted in California, so the Court will apply the law of that jurisdiction.

This approach is consistent with Ninth Circuit cases that generally analyze Rule 68 agreements as if they were stand-alone contracts.[3] See, e.g., Erdman v. Cochise Cty., Ariz., 926

---

[2] For example, New York courts have held that that a contractually-based forum selection clause governs tort claims if the tort claims "ultimately depend on the existence of a contractual relationship" between the parties. Direct Mail Prod. Services Ltd., v. MBNA Corp., No. 99 Civ. 10550(SHS), 2000 WL 1277597, *6 (S.D.N.Y. Sept. 7, 2000) (citing cases).

[3] If SGC intended New York law to govern the Rule 68 agreement, it should have made it an explicit term of its offer.

4

F.2d 877, 880 (9th Cir. 1991) (explaining that "[t]ypically, a [Rule 68] settlement agreement is analyzed in the same manner as any contract"). As a standalone contract, a Rule 68 agreement is interpreted according to the "usual rules of contract construction." Nusom v. Comh Woodburn, Inc., 122 F.3d 830, 833 (9th Cir. 1997).

SGC points to two federal cases that applied contractual choice of law clauses to determine whether a prevailing plaintiff was entitled to attorneys' fees and prejudgment interest. Alakai'i Mech. Corp. v. RMA Land Constr., Inc. – ECC (a Joint Venture), No. 14-00145-HG-KSC, 2016 WL 8710425, at *3 (D. Haw. Han. 15, 2016); Serenity Lane v. Netsmart Techs., Inc., No. 6:14-CV-00038-TC, 2015 WL 3862527, at *7 (D. Or. June 22, 2015). These cases do not assist SGC. In both cases, the court was entering judgment on a claim for breach of the same contract containing the choice of law provision. Alakai'i, 2016 WL 8710425 at *1, 5; Serenity Lane, 2015 WL 3862527 at *1, 7. Neither case involves a Rule 68 offer of judgment. SGC has not identified – and the Court is not aware of – any authority suggesting that a Rule 68 agreement that resolves a breach of contract case should be governed by the law of the jurisdiction specified in the underlying contract's choice of law provision.

The Court will apply California law and apply a 10% prejudgment interest rate.

### B. Terminal Date of Interest Accrual

The parties agree that interest began to accrue on June 17, 2016, the day Hydros wrote to SGC declaring breach. ECF No. 51 at 6; ECF No. 58 at 15. The parties disagree, however, on the date when the interest stopped accruing. Id. SGC admits that interest on the tooling deposit continued to accrue until March 17, 2017, the day SGC made its Rule 68 offer, because before that time SGC had never made an offer to return the tooling deposit. Id. at 15. However, it argues that interest on the purchase order deposit ($329,180) and the tooling stopped accruing on September 22, 2016, when SGC allegedly made its first of several unconditional offers to return the purchase order deposit and tooling. ECF No. 58 at 12.

Hydros argues that interest did not stop accruing on any of the damages SGC owes Hydros until SGC made the Rule 68 offer on March 17, 2017. ECF No. 62 at 3. Hydros contends that none of SGC's earlier offers was unconditional, and therefore none ceased the accrual of interest.

See ECF No. 61 at 12.

Typically, prejudgment interest compensates plaintiffs "from the time the claim accrues until judgment is entered." Schneider, 285 F.3d at 789 (citation omitted). However, a valid and unconditional "offer of payment or other performance . . . stops the running of interest on the obligation. . . ." Cal. Civ. Code § 1504; see also Schiffner v. Pappas, 223 Cal. App. 2d 526, 530 (1963) (finding that an offer accompanied by conditions was not a valid tender and did not stop the accrual of interest).

The parties focus their briefing on whether or not the SGC's settlement offers were unconditional. That question, however, is not dispositive here. Even if the offers were unconditional, they still did not suspend the accrual of interest because none was for the full amount SGC eventually agreed to pay Hydros. That is because under California Civil Code section 1486, "[a]n offer of partial performance is of no effect." Cal. Civ. Code § 1486. Courts have interpreted this provision to mean that an offer, even if unconditional, does not suspend the accrual of interest if it is for an amount less than the final judgment. See Lovetro v. Steers, 234 Cal. App. 2d 461, 479 (1965) (finding that "nothing short of the full amount due the creditor is sufficient to constitute a valid tender, and the debtor must at his peril offer the full amount" (citation omitted)). SGC does not dispute that its offers to Hydros were for less than the final settlement amount, as the offers did not include the $97,824 tooling deposit it would later agree to return as part of its Rule 68 offer. Accordingly, even if SGC's offers were unconditional, they did not suspend the accrual of interest on any of the damages SGC owes Hydros.

Therefore, the Court finds that interest accrued on all damages from the day Hydros declared breach on June 17, 2016 until the day SGC made its Rule 68 offer on March 17, 2017.

### C. The Principle Amount

The Rule 68 agreement provided that SGC would turn over the tooling and pay prejudgment interest "in connection with the Rule 68 [p]ayment and the return of the tooling . . . ." ECF No. 46-1 at 3. The payment included the $329,180 purchase order deposit as well as the $97,824 tooling deposit. Id. The parties agree that Hydros is entitled to interest on these deposits. ECF No. 51 at 6-8; ECF No. 58 at 15.

Hydros now argues, however, that SGC should pay interest on an additional $97,824 because the tooling deposit represented only half of the value of the tooling (since it was a 50% deposit on the tooling). ECF No. 51 at 7. Hydros contends that SGC agreed to pay interest on this additional sum when it stated in the Rule 68 agreement that it would pay interest "in connection with the Rule 68 [p]ayment <u>and the return of the tooling</u>. . . ." ECF No. 62 at 5 (emphasis in original).

SGC counters that it owes interest only on the purchase order and tooling deposits, not on the tooling itself. ECF No. 58 at 14. It argues that even if the Rule 68 agreement stated that it would pay interest "in connection" with the return of the tooling, Hydros has admitted the tooling has no value (given its claim that SGC failed to provide any production quality samples), so SGC should not be required to pay interest on it. <u>Id.</u>

The Court agrees with SGC that the connection between "the return of the tooling" and the additional $97,824 is not as clear as Hydros contends. The most plausible reading to the Court of the Rule 68 agreement is that it requires SGC to pay interest on the deposits as well as on any losses Hydros incurred as a result of SGC's delay in returning the tooling. The Court does not read the agreement to provide for interest on the alleged value of the tooling.

Even if the Court found there was some basis for this alleged promise, however, it would still not require interest on the additional $97,824. Although Hydros is correct that ambiguous Rule 68 offers are typically interpreted against the defendant, courts also have an obligation to ensure a defendant is not required "to pay a penalty on a sum it could not ascertain prior to judgment." <u>Asus Computer Int'l v. CompSolutions VA, Inc.</u>, No. C 07-02204 WHA, 2008 WL 2344819, at *4 (N.D. Cal. June 5, 2008). It is true the parties agreed Hydros would pay SGC a $97,824 deposit to build the tooling and an additional $97,824 upon completion of its development, but that does not necessarily mean the value of the tooling equates to the sum of the two payments. As Defendant points out, the value of the tooling after the breach is likely nothing. ECF No. 58 at 14. Accordingly, requiring SGC to pay interest on the value of the tooling, which at this point is not certain, would run the risk of impermissibly requiring a defendant to pay interest on a sum it could not have ascertained prior to judgment. <u>See</u> <u>Asus Computer Int'l</u>, 2008

7

WL 2344819, at *4.

Finally, requiring SGC to pay interest on the additional $97,824 would be inconsistent with the purpose of prejudgment interest, which is to compensate the plaintiff "for the loss of use of money due as damages," not to provide the plaintiff an opportunity to recoup additional damages after a settlement has been reached. Schneider, 285 F.3d at 789; see also Barnard v. Theobald, 721 F.3d 1069, 1078 (9th Cir. 2013) (holding that "prejudgment interest is an element of compensation, not a penalty"). Requiring SGC to pay interest on the additional $97,824 would undermine this purpose because Hydros never <u>lost use</u> of this additional $97,824; Hydros only agreed to pay it upon completion of the tooling's development, which never occurred. Therefore, requiring SGC to pay interest on money that never left Hydros's possession would more closely resemble an additional penalty rather than compensation based on agreed upon damages.[4]

Accordingly, the Court finds that Hydros should be awarded interest only on the Rule 68 payment ($427,004.00) and not on the purported value of the tooling.

## CONCLUSION

The Court will amend the Rule 68 judgment to award Hydros its prejudgment interest as follows:

Number of days from June 17, 2016 to March 17, 2017: 273 days

Per diem simple interest: $427,004.00 x 10% = $42,700.40/365 days = $116.99

Total prejudgment interest: $116.99 x 273 days = $31,937.56

**IT IS SO ORDERED.**

Dated: August 10, 2017

$\overline{\qquad\qquad\qquad\qquad\qquad\qquad}$
JON S. TIGAR
United States District Judge

---

[4] Hydros could conceivably claim some rent value associated with SGC's possession of the tooling that, under the terms of the Supply Agreement, belonged to Hydros. But neither party provides any basis for estimating this value, and given the parties' agreement that the tooling did not produce any market-quality products, the Court declines to award any interest on this amount.

8